FILED

2017 Feb-01  PM 03:21
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **SURESHBHAI PATEL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:  5:15-CV-0253-VEH** |
| | ) | |
| **CITY OF MADISON, ALABAMA,** | ) | |
| **and ERIC SLOAN PARKER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

Plaintiff Sureshbhai Patel's ("Mr. Patel") initiated this civil rights action on February 12, 2015 (Doc. 1) and most recently amended his complaint on October 3, 2016. (Doc. 58). Pending before the court is the Renewed Motion To Dismiss Fourth Amended Complaint of Defendant City of Madison, Alabama (the "City") (Doc. 60) (the "Motion") filed on October 21, 2016. In light of Mr. Patel's failure to oppose the Motion under the schedule contained in Appendix III to the court's uniform initial order (Doc. 20), the court entered an order (Doc. 62) directing Mr. Patel to show cause why the Motion should not be granted. On January 4, 2017, Mr. Patel filed his response. (Doc. 63). The City filed its reply (Doc. 64) on January 11, 2017. For the reasons stated below, the Motion is **GRANTED IN PART** and otherwise is

**DENIED**.

## II.      Rule 12(b)(6) Standard

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* FED.
R. CIV. P. 12(b)(6) ("[A] party may assert the following defenses by motion:  (6)
failure to state a claim upon which relief can be granted[.]"). The Federal Rules of
Civil Procedure require only that the complaint provide "'a short and plain statement
of the claim' that will give the defendant fair notice of what the plaintiff's claim is
and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99,
103, 2 L. Ed. 2d 80 (1957) (footnote omitted) (quoting FED. R. CIV. P. 8(a)(2)),
*abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955,
1965, 167 L. Ed. 2d 929 (2007); *see also* FED. R. CIV. P. 8(a) (setting forth general
pleading requirements for a complaint including providing "a short and plain
statement of the claim showing that the pleader is entitled to relief").

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8
does not mandate the inclusion of "detailed factual allegations" within a complaint.
*Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley*, 355 U.S. at 47, 78 S.
Ct. at 103). However, at the same time, "it demands more than an unadorned,
the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662,
678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been

2

stated adequately, it may be supported by showing any set of facts consistent with the

stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid*." *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

### III.   Analysis

#### A.   Background

This case involves a law enforcement incident occurring on February 6, 2015, when Mr. Patel–a 57-year-old citizen of India who was visiting Alabama so that he could assist his son and daughter-in-law in the care of their 17-month-old son–encountered Defendant Eric Parker ("Officer Parker"), an officer with the Madison Police Department during a walk in Mr. Patel's son's neighborhood. (Doc. 58 at 1 ¶ 4). Earlier that morning, a neighbor had reported Mr. Patel as a suspicious person to the Madison Police Department. (Doc. 58 at 2 ¶ 10). Officer Parker first "searched [Mr.] Patel for weapons" and found him to be unarmed. (Doc. 58 at 3 ¶¶ 17-18). "After the search, without provocation, [Officer] Parker restrained [Mr.] Patel's arms and slammed [Mr.] Patel face first into the ground using a leg sweep." (Doc. 58 at 3 ¶ 19). Mr. Patel was seriously injured as a result of this use of force and "immediately became paralyzed in his arms and legs" due to "significant trauma" impacting his spinal cord. (Doc. 58 at 3 ¶ 21). Mr. Patel was hospitalized and has been through a long period of rehabilitation. (Doc. 58 at 3-4 ¶¶ 24-25). Mr. Patel alleges that, had he not been seriously injured, Officer Parker would have charged him with obstructing governmental operations and resisting arrest. (Doc. 58 at 9 ¶ 52).

Mr. Patel's Fourth Amended Complaint (Doc. 58) contains six counts. Three of these allege federal constitutional violations and are brought against the City and Officer Parker jointly pursuant to 42 U.S.C. § 1983. Count I is for illegal seizure; Count II is for unlawful search; and Count III is for excessive force. (Doc. 58 at 13-15 ¶¶ 73-84). The remaining counts are state law claims alleged against Officer Parker only.

The City's Motion seeks a dismissal of all three claims brought against it. (Doc. 60 at 2). However, rather than dealing with the elements of each specific count, the City's briefing addresses Mr. Patel's claims collectively. More specifically, the City challenges whether Mr. Patel's allegations plausibly meet the *Monell* standard governing municipal liability for constitutional violations.[1] Under *Monell*, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." 436 U.S. at 694, 98 S. Ct. at 2037. Instead, for liability beyond *respondeat superior* to plausibly attach, a municipality's official policy or custom (including, under certain circumstances, the absence of any policy when policymakers have been deliberately indifferent about the need to have one) must be the "moving force [behind] the constitutional violation[.]" 436 U.S. at 694, 98 S. Ct. at 2038.

---

[1] The full case citation is *Monell v. Department of Social Serv.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

In each of the three counts involving the City, Mr. Patel makes a *Monell*-based reference that contains almost identical (*i.e.*, when comparing Counts I and II) and/or partially overlapping language (*i.e.*, when comparing Count III with Counts I and II):

- Count I:   "The City's policies and customs, including those regarding necessary training, stops, abusive charges, investigations of citizen complaints, and tolerance for constitutional violations in general, were the moving force behind [Officer] Parker's violation of [Mr.] Patel's Fourth Amendment rights." (Doc. 58 at 13 ¶ 75);

- Count II:   "The City's policies and customs, including those regarding necessary training, weapons patdowns, investigations of citizen complaints, and tolerance for constitutional violations in general, were the moving force behind [Officer] Parker's violation of [Mr.] Patel's Fourth Amendment rights." (Doc. 58 at 14 ¶ 79); and

- Count III:   "The City's policies and customs, including those regarding investigations of citizen complaints, and tolerance for constitutional violations in general, were the moving force behind [Officer] Parker's violation of [Mr.] Patel's Fourth Amendment rights." (Doc. 58 at 15 ¶ 83).

Here, the City primarily asserts that Mr. Patel has alleged merely conclusory and, therefore, legally insufficient facts to show that "the City's failure to train its officers on the constitutional limits in investigatory stops and its alleged failure to investigate officer misconduct or to discipline officers" (Doc. 61 at 3)[2] were the "moving force" behind Mr. Patel's injuries.

---

[2]  All page references to Doc. 61 correspond with the court's CM/ECF numbering system.

The City also challenges Mr. Patel's reliance upon a ratification theory based upon the reinstatement of Office Parker to show that it is liable for Mr. Patel's alleged injuries. *Id.* Against this backdrop, the court analyzes the plausibility of Mr. Patel's *Monell*-based theories and the merits of the City's Motion.

### B.    Failure To Train

One way to establish official municipal policy in the context of challenged police action is through deficient officer training. In *City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989), the Supreme Court acknowledged that "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability in § 1983[,]" and held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." 489 U.S. at 387, 388, 109 S. Ct. at 1204. In other words, the deliberate indifference standard requires a conscious choice on the part of a municipality before it "can . . . properly be thought of as a 'policy or custom' that is actionable under § 1983." 489 U.S. at 389, 109 S. Ct. at 1205. The individual shortcomings of a police officer or even the negligent administration of an "otherwise sound program" are insufficient grounds for maintaining a § 1983 municipal claim. *Canton*, 489 U.S. at 390, 109 S. Ct. at 1206.

In addressing the failure to train as a custom or policy under § 1983, the Eleventh Circuit has clarified:

> Only when the failure to train amounts to "deliberate indifference" can it properly be characterized as the "policy" or "custom" that is necessary for section 1983 liability to attach. *City of Canton*, 489 U.S. at 389, 109 S. Ct. at 1205. Failure to train can amount to deliberate indifference when the need for more or different training is obvious, *id.* at 390, 109 S. Ct. at 1205, such as when there exists a history of abuse by subordinates that has put the supervisor [or municipality] on notice of the need for corrective measures, *Greason*, 891 F.2d at 837, and when the failure to train is likely to result in the violation of a constitutional right, *City of Canton*, 489 U.S. at 390, 109 S. Ct. at 1205.

*Belcher v. City of Foley*, 30 F.3d 1390, 1397-98 (11th Cir. 1994).

The City contends that Mr. Patel's failure to train allegations are controlled by the Eleventh Circuit's decision affirming the district court's Rule 12(b)(6) dismissal of a *Monell*-training claim in *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015). The plaintiff in *Weiland* complained about "two Palm Beach County Sheriff's Office deputies shooting, tasering, and beating him in his own bedroom without warning or provocation during their response to a 'Baker Act call[,]'"[3] 792 F.3d at 1316, and attributed *Monell* liability to the Sheriff's Office on account of its "policy of not training its deputies in the appropriate use of force when

_____

[3] Under Florida's Baker Act, a person suffering from a mental illness may be subject to an involuntary examination at a mental health facility under certain circumstances. *See Weiland*, 792 F.3d at 1316 n.1 (describing Baker Act by directly quoting from Fla. Stat. § 394.463(1)(b)(2)).

seizing mentally ill citizens for transportation to mental health facilities." 792 F.3d

1328. In rejecting the *Weiland* plaintiff's failure-to-train theory, the Eleventh Circuit

explained:

> "In limited circumstances, a local government's decision not to train certain employees ... to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011). But "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 1359-60 (quotation marks omitted). Count two does not allege a pattern of similar constitutional violations by untrained employees. Although it contains the conclusory allegation that the Sheriff's Office was "on notice" of the need to "promulgate, implement, and/or oversee" policies pertaining to the "use of force" appropriate for "the seizure of mentally ill persons and their transportation to mental health facilities," no facts are alleged to support that conclusion. Instead, it is clear that the claim outlined in count two arises from a single incident and the actions of two deputies.

792 F.3d at 1328-29 (footnotes omitted) (emphasis added).

Regarding the caliber of facts needed to plausibly state a § 1983 failure-to-train

claim, the Eleventh Circuit noted that the complaint lacked "allegations that the prior

Baker Act calls resulted in similar violations . . . of Weiland's constitutional rights

or that the Sheriff's Office was aware of those violations and therefore 'on notice' of

a need to train and supervise deputies in this particular area." 792 F.3d at 1239 n.21.

The Eleventh Circuit also found that the complaint's reference to "numerous police

shootings" of mental health patients in Palm Beach County as providing the Sheriff's

9

Office with notice of a need to train were inadequate under *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966.[4] *Weiland*, 792 F.3d at 1239 n.21. Instead, the plaintiff "must allege, with some 'factual enhancement,' that those shootings gave rise to 'similar constitutional violations[.]'" 792 F.3d at 1239 n.21 (citations omitted).

Mr. Patel counters that, under *Hoefling v. City of Miami*, 811 F.3d 1271 (11th Cir. 2016), he is not obligated "to identify other specific incidents" to plausibly support his municipal liability claim. (Doc. 63 at 3). The plaintiff in *Hoefling* complained that "the City and its marine patrol officers" violated his procedural due process and Fourth Amendment rights when they destroyed his boat without notice. 811 F.3d at 1280. The district court dismissed the § 1983 municipal claim in *Hoefling* on the basis that "Mr. Hoefling failed to identify the City official who acted as the final policymaker." 811 F.3d at 1279. The Eleventh Circuit disagreed and held that "[a]ll he needed to do was allege a policy, practice, or custom of the City which caused the seizure and destruction of his sailboat."[5] *Id.* at 1280.

_____

[4] Regarding allegations about any shootings that occurred somewhere outside of Palm Beach County, those could "not establish a pattern of similar constitutional violations by employees of the Sheriff's Office that would put it on notice that its own training is inadequate." *Weiland*, 792 F.3d at 1239 n.21.

[5] The Eleventh Circuit's opinion in *Hoefling* does not discuss plausible pleading in the context of a failure-to-train theory. Instead, the *Hoefling* appeal involves factual allegations that are more closely aligned with the standing policy *Monell* claim analyzed by the First Circuit in *Haley*. *See* discussion, *infra*, § III.F.

10

The court then detailed how the *Hoefling* plaintiff met the *Twombly* pleading standard:  he not only described the seizure and destruction of his own boat, but also referred to a telephone "call from a friend 'notifying him that the police were taking boats'" as well as examples of 'others [who] ha[d] fallen victim to similar conduct as a result of the City['s] and [the marine patrol officers'] failure to adhere to law and appropriate procedures regarding the investigation and destruction of potentially derelict vessels.'" *Id.* Additionally, he claimed "that the City refer[red] to this 'systematic roundup and destruction of ugly boats in its waters' as a 'cleanup' program." *Id.* Ultimately, the Eleventh Circuit concluded that Mr. Hoelfling's facts were "not the sort of 'naked allegations' . . . found [to be] wanting in *Weiland*, 792 F.3d at 1329-30 (brackets and quotation marks deleted)." 811 F.3d at 1281. Thus, "Mr. Hoefling's allegations were sufficient to state a facially plausible municipal liability claim because they permit 'the reasonable inference that [the City] is liable for the misconduct alleged.'" *Hoefling*, 811 F.3d at 1281 (quoting *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949).

As set forth above, under each specific count involving the City, Mr. Patel invokes merely boilerplate language and does not describe a facially plausible § 1983 *Monell*-training claim. Mr. Patel's allegations that precede his specific counts do not transform his training claim into a plausible one either. For example, Mr. Patel alleges

that "City policymakers knew to a moral certainty that City officers would regularly confront the questions of 1) whether a stop was permissible and 2) whether a patdown for weapons was justified." (Doc. 58 at 7 ¶ 41). Mr. Patel further asserts that "City policymakers, with deliberate indifference, failed to take steps to insure [sic] officers were trained and supervised regarding the constitutional limits of officers' authority in these areas." (Doc. 58 at 7 ¶ 42).

However, nowhere does Mr. Patel adequately connect how these (or his other) allegations form a larger constitutional pattern plausibly establishing the City's deliberate indifference to the need for specific training to prevent the reoccurrence of comparable constitutional injuries. Notably, Mr. Patel does not contend that the City was aware of other situations involving an officer's improper use of a "self-initiated" contact, a weapons patdown, or a "leg sweep" which resulted in constitutional injuries comparable to his and which plausibly put the City on notice of the need to address this systematic problem with additional training. Further, Mr. Patel's contention that this court should follow *Hoefling* as a less demanding alternative to *Weiland* is misplaced, given that *Hoefling* is <u>not</u> a failure-to-train opinion. Thus, Mr. Patel's failure-to-train theory lacks the level of "factual enhancement" necessary to support a plausible *Monell* claim. *Weiland*, 792 F.3d at 1239 n.21; *see also Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("Threadbare recitals

12

of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Citing to *Danley v. Allen*, 540 F.3d 1298 (11th Cir. 2008), *overruled as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010) ("While *Swann*, *GJR*, and *Danley* reaffirm application of a heightened pleading standard for § 1983 cases involving defendants able to assert qualified immunity, we agree with Randall that those cases were effectively overturned by the *Iqbal* court."), Mr. Patel maintains that his notice allegations about force reports and citizen complaints (Doc. 58 at 11 ¶ 67) are adequate to show a pattern of constitutional violations (Doc. 63 at 7) and "cannot be dismissed as insufficiently specific." (Doc. 63 at 8). The court disagrees and finds Mr. Patel's reliance upon *Danley* to be misplaced for at least two reasons. First, *Danley* pre-dates *Twombly* and *Iqbal* and, therefore, does not apply the plausibility standard set out in those cases.

Second, the Eleventh Circuit's discussion of the supervisory allegations at issue in *Danley* included more than just a general assertion that prior complaints and force reports were made. *See Danley*, 540 F.3d at 1315 ("[T]he numerous complaints to Rikard and Willis about the excessive use of pepper spray and the denial of adequate medical treatment to inmates, especially during the shift on which Allyn, Wood, and Woods worked, were enough to put them on notice of misconduct that was

sufficiently 'obvious, flagrant, rampant and of continued duration' to require them to act."). Therefore, *Danley* does not further Mr. Patel's position and the Motion is **GRANTED** regarding Mr. Patel's reliance upon a failure-to-train theory to support his constitutional claims brought against the City.

### C.    Obvious Need for Training

The Supreme Court in *Canton* suggested that not all failure-to-train claims would require prior notice and noted that "the need to train officers in the constitutional limitations on the use of deadly force, *see Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985), can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." 489 U.S. at 390 n.10, 109 S. Ct. 1205 n.10. The Supreme Court later described this discussion in *Canton* as follows.  "In leaving open . . . the possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations, we simply hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409, 117 S. Ct. 1382, 1391, 137 L. Ed. 2d 626 (1997).

In its Motion, the City contests Mr. Patel's efforts to allege an obvious-need-

for-training claim. (Doc. 61 at 15-19). In particular, the City contends that the facts of Mr. Patel's case that challenge the scope of Officer Parker's investigatory stop of and use of force against him do not plausibly support an obvious training claim, especially as his Fourth Amended Complaint acknowledges that the City's officers received some training. (*See* Doc. 58 at 8 ¶ 46 ("Officers are initially trained at a certified policy academy and are instructed regarding constitutional rules.")).

In *Connick v. Thompson*, 563 U.S. 51, 64, 131 S. Ct. 1350, 1361, 179 L. Ed. 2d 417 (2011), the Supreme Court rejected an attempt to establish obvious or "'single-incident' liability [for] . . . . failing to provide specific *Brady* training . . . ." to parish prosecutors. *Connick*, 563 U.S. at 63, 131 S. Ct. at 1361. As part of its reasoning for holding that "a district attorney's office [can]not be held liable for failure to train based on a single *Brady* violation[,]" 563 U.S. at 54, 131 S. Ct. at 1355, the *Connick* Court distinguished *Canton*'s window for an obviousness exception:

> A second significant difference between this case and the example in *Canton* is the nuance of the allegedly necessary training. The *Canton* hypothetical assumes that the armed police officers have no knowledge at all of the constitutional limits on the use of deadly force. But it is undisputed here that the prosecutors in Connick's office were familiar with the general *Brady* rule. <u>Thompson's complaint therefore cannot rely on the utter lack of an ability to cope with constitutional situations that underlies the *Canton* hypothetical, but rather must assert that prosecutors were not trained about particular *Brady* evidence or the</u>

specific scenario related to the violation in his case. That sort of nuance simply cannot support an inference of deliberate indifference here. As the Court said in *Canton*, "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." 489 U.S., at 392, 109 S. Ct. 1197 (citing *Tuttle*, 471 U.S., at 823, 105 S. Ct. 2427 (plurality opinion)).

Thompson suggests that the absence of any *formal* training sessions about *Brady* is equivalent to the complete absence of legal training that the Court imagined in *Canton*. But failure-to-train liability is concerned with the substance of the training, not the particular instructional format. The statute does not provide plaintiffs or courts *carte blanche* to micromanage local governments throughout the United States.

*Connick*, 563 U.S. at 67-68, 131 S. Ct. at 1363 (emphasis by underlining added); *see also Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1309 (11th Cir. 2006) ("The failure to provide *specific* training regarding the detention of students, in addition to general training regarding use of force during detention and arrest, was not 'so likely' to result in the violation of students' Fourth Amendment rights that Sheriff Sexton reasonably can be said to have been deliberately indifferent to the need for this particularized training without any prior notice.") (emphasis by underlining added).

Guided by the holdings in *Connick* and *Bostic*, the court concludes that, given Mr. Patel's allegations concerning the City's inadequate (as opposed to a complete lack of) police officer training, his constitutional claims do not support municipal

liability. The court's conclusion to dismiss this narrow exception to the conventional framework applicable to § 1983 training liability is bolstered by Mr. Patel's underdeveloped and superficial resistance to that theory's dismissal. Without meeting any of the City's arguments and cited cases head on, Mr. Patel minimally states:

> Because plaintiff's complaint more than sufficiently alleges a failure-to-train claim under the *City of Canton* notice prong, the Court does not need to reach any issue regarding the obvious-need-for-training prong at this time. Plaintiff would nevertheless point out that the City does not dispute that officers need to be trained regarding the limits on their authority to stop and frisk. While the City contends any "obvious" training obligation is satisfied by the police academy, that is a matter more properly resolved on summary judgment. Plaintiff has alleged an obvious need for training and a failure and a refusal to train.

(Doc. 63 at 9); (*see also* Doc. 64 at 10 ("Plaintiff offers no real arguments in opposition and all but concedes the 'obvious' failure to train theory in his response.")). Therefore, the Motion is **GRANTED** regarding Mr. Patel's reliance upon an obvious-need-to-train theory to support his constitutional claims brought against the City.

### D.    Failure To Investigate and Discipline

Mr. Patel alleges in a conclusory fashion that, prior to the incident involving him, "City policymakers were aware of numerous incidents in which citizens were subjected to unconstitutional stops, searches, arrests, and uses of force but took no action to investigate and discipline officers." (Doc. 58 at 8 ¶ 50). Mr. Patel's *Monell*

17

claims premised upon the City's failure to investigate complaints and discipline officers for their misconduct suffer from the same infirmities as his § 1983 training ones–he has not linked his counts of illegal seizure, unlawful search, or excessive force to non-boilerplate examples of inadequately investigated/disciplined officer misconduct involving self-initiated contacts, weapons patdowns, or leg sweeps, which resulted in constitutional injuries comparable to his and which plausibly put the City on notice of the need to address this systematic problem. Thus, Mr. Patel's failure-to-investigate/discipline theory lacks the level of "factual enhancement" necessary to support a plausible *Monell* claim. The Motion is **GRANTED** regarding Mr. Patel's reliance upon a failure-to-investigate/discipline theory to support his constitutional claims brought against the City.

### E.    Ratification

Mr. Patel alleges that "[t]he City's reinstatement of [Officer] Parker and finding that his conduct was within City policy constitutes a ratification of [Officer] Parker's constitutional violations and makes the City liable for [them under *Monell*]." (Doc. 58 at 10 ¶ 59). Relying upon the Eleventh Circuit's decision in *Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160 (11th Cir. 2001), *vacated on other grounds by* 536 U.S. 953 (2002), *reinstated by* 323 F.3d 950 (11th Cir. 2003), the City contends that a solitary decision to reinstate Officer Parker to the Madison Police Department does

not plausibly give rise to ratification liability pursuant to § 1983.

Mr. Patel agrees in his opposition that "current Eleventh Circuit law does not allow for municipal liability based solely on post-incident ratification." (Doc. 63 at 5-6); *cf. also Brown*, 520 U.S. at 415, 117 S. Ct. at 1394 (observing that "every injury is traceable to a hiring decision" and rejecting municipal liability premised upon a single hiring decision "without adequate screening" as contrary "to [the] rigorous requirements of culpability and causation" required by *Monell*). Nonetheless, Mr. Patel contends that, within the Eleventh Circuit, "post-incident actions can be strong evidence of pre-existing policy." (Doc. 63 at 6 (citing *Salvato v. Miley*, 790 F. 3d 1286, 1297-98 (11th Cir. 2015)).

As pointed out in the City's reply (Doc. 64 at 9-10), *Salvato*'s holding reinforces the City's position. In *Salvato*, the Eleventh Circuit acknowledged that a "persistent failure to take disciplinary action against officers can give rise to the inference that a municipality has ratified conduct." 790 F.3d at 1297 (internal quotation marks omitted) (emphasis added) (quoting *Thomas*, 261 F.3d at 1174 n.12). However, ultimately, the facts in *Salvato* did not meet this persistence standard and the Eleventh Circuit held that a "sheriff cannot be held liable under section 1983 for a single failure to investigate a constitutional violation[.]" 790 F.3d at 1298 (emphasis added); *see also id.* ("But an isolated incident is, by definition, not a 'persistent

19

failure.'").

Similar to *Salvato*, Mr. Patel's complaint is devoid of non-boilerplate allegations plausibly approaching a persistent pattern of problematic officer reinstatement by the City. Instead, those of Mr. Patel's ratification-related allegations with any factual description are limited to the City's post-incident treatment of Mr. Patel and Officer Parker. (*See, e.g.*, Doc. 58 at 9 ¶ 55 ("Thus, the City's initial press release attempted to blame the incident on [Mr.] Patel"); *id.* ¶ 52 ("The City's policymakers did not criticize [Officer] Parker's initial seizure of [Mr.] Patel, [Officer] Parker's aggressive and unconstitutional search for weapons, or [Officer] Parker's arrest of [Mr.] Patel."); *id.* at 10 ¶ 58 ("On September 6, 2016, the City announced, through acting police chief Major Jim Crooke, that [Officer] Parker's actions regarding [Mr.] Patel did not violate any City policy and that [Officer] Parker, after completing necessary training for re-certification, would be returned to duty.")). Therefore, the Motion is **GRANTED** regarding Mr. Patel's reliance upon a ratification theory to support his constitutional claims brought against the City.

## F.    Standing Policy and Custom

In his opposition brief, Mr. Patel asserts that his Fourth Amended Complaint contains a policy and custom claim against the City that is separate from his failure-to-train theory. (Doc. 63 at 2); (*see also id.* at 10 ("Moreover, plaintiff's complaint

contains detailed allegations regarding the City's use of its field training program in a manner designed to directly counter academy training regarding constitutional standards. Thus, perhaps, plaintiff's failure to train claim more naturally fits as part of a policy and custom claim, as explained above.").

As legal support for his argument, Mr. Patel relies upon *Haley v. City of Boston*, 657 F.3d 39 (1st Cir. 2011), and points out that the Eleventh Circuit cited to *Haley* with approval in *Hoefling*. 811 F.3d at 1281. As the First Circuit summarized the municipal claims at issue in *Haley*, the plaintiff "alleged both that the [Boston Police Department] had a standing policy that was itself unconstitutional and that the City failed to train its personnel in their evidence-disclosure obligations despite notice of persistent and ongoing violations. These allegations are sufficient to anchor two separate *Monell*-type claims, each demanding a different kind of proof." 657 F.3d at 51.

The *Haley* court further explained the contours of a standing policy *Monell* claim:

> Haley's first *Monell*-type claim implicates the standing policy itself. "Where a plaintiff claims that a particular municipal action itself violates federal law, or directs an employee to do so, resolving [the] issues of fault and causation is straightforward" as long as the appropriate level of culpability is established. *Id.* at 404, 117 S. Ct. 1382. . . .

21

> The complaint alleges that the detectives' withholding of the sisters' statements occurred pursuant to a standing [Boston Police Department] policy, under which Boston police officers regularly kept helpful evidence from criminal defendants. The complaint further alleges that this policy was designed to encourage successful prosecutorial outcomes despite the existence of evidence pointing to innocence. The complaint contrasts the [Boston Police Department]'s policy with that of the district attorney's office, which it alleges had a standing policy to disclose all known exculpatory and impeachment evidence in full compliance with *Brady*. Haley argues that, in his case, the district attorney's office was unable to fulfill its salutary (and constitutionally mandated) disclosure policy because the [Boston Police Department] failed to apprise it of the sisters' statements. The end result was Haley's wrongful conviction.

*Haley*, 657 F.3d at 51-52, 52. The plaintiff's failure-to-train theory drew on similar facts and was pleaded in the alternative: "that the [Boston Police Department]'s unconstitutional suppression of the sisters' statements, if not the result of a standing policy, was precipitated by poor training, to which the City was deliberately indifferent." 657 F.3d at 52. While acknowledging the closeness of the call, 657 F.3d at 53 n.5, the *Haley* court concluded that both municipal claims "contain[ed] sufficient factual content to survive a motion to dismiss . . . ." 657 F.3d at 53.

In reply to Mr. Patel's reliance upon *Haley*, the City urges that "*Haley* is inapt because in that case the city incorrectly argued on a motion to dismiss that the allegations of the plaintiff's complaint were not true." (Doc. 64 at 6). While the First Circuit did comment that "[w]hether Haley can prove what he has alleged is not the

issue", that court clearly decided the plausibility question based upon the plaintiff's allegations, not a mistaken argument made by the defendant. *Haley*, 657 F.3d at 52. Further, the City's argument ignores the fact that, in *Haley*, "[t]he City also contend[ed] that both municipal liability claims fail as a matter of pleading to meet the . . . [*Twiqbal*] 'plausibility' requirement." *Id.* The City also unconvincingly attempts to discount the persuasive value of *Haley* even though the Eleventh Circuit found it to be worthy of citing to in *Hoefling*.

Further, the court agrees that Mr. Patel's Fourth Amended Complaint includes standing policy and custom allegations that are separate from and analyzed differently than his failure-to-train ones. (*See, e.g.*, Doc. 58 at 7 ¶ ("[T]he City evaluated officers' performance based in part on their statistics for 'self initiated' contacts, arrests, and tickets, thereby encouraging officers to be aggressive in their approaches to allegedly suspicious persons."); *id.* ¶ 43 ("Officers were encouraged to make stops without also being reminded of the limits on their authority to make them."); *id.* at 8 ¶ 44 ("[P]olice officers were specifically trained that patdowns for weapons were permitted, in the officer's complete discretion, during any investigatory stop."); *id.* ¶ 47 ("Academy training, however, is <u>followed by a 16-week training program in which FTOs teach new officers how the job is really done</u>.) (emphasis added);[6] *id.* ¶

---

[6] FTO stands for field training officer. (Doc. 58 at 2 ¶ 11).

48 ("In treating [Mr.] Patel as he did, [Officer] Parker, the FTO, was teaching the trainee with him about how the job of a Madison police officer is really done."); *id.* ¶ 49 ("Thus, multiple FTOs testified in [Officer] Parker's criminal trials that [Officer] Parker's actions were consistent with Madison policy and training.")).

Importantly, the City's Motion does not address the plausibility of Mr. Patel's standing policy and custom theory in light of these particular allegations that represent affirmative Madison Police Department acts and practices. Instead, the City omits any reference to Mr. Patel's reliance upon this type of direct-causation *Monell* claim and, even in its reply, incorrectly insists that Mr. Patel only identifies two customs or policies–the alleged failure to train and the alleged failure to investigate/discipline. (Doc. 64 at 1-2). Therefore, persuasively guided by *Haley* and *Hoefling* (which comparably involved the plausibility of facts reflecting a standing municipal policy to seize and destroy boats without prior notice to the owners), the court finds that Mr. Patel has plausibly asserted the existence of a standing policy or custom attributable to the City through the Madison Police Department that is distinct from his failure-to-train theory and that, if proven, could support Mr. Patel's constitutional claims asserted against the City. Thus, to that extent, the Motion is **DENIED**. Alternatively, the Motion is **DENIED** because, in seeking a dismissal of all counts asserted against it by Mr. Patel, the City has overlooked (or ignored) the

24

existence of this alternative theory of *Monell* liability and, therefore, simply has not carried its burden as the movant.

## IV.    Conclusion

Therefore, the City's Motion is **GRANTED IN PART** and otherwise is **DENIED**. The deadline for the City to answer Mr. Patel's Fourth Amended Complaint is no later than February 15, 2017.

**DONE** and **ORDERED** this the 1st day of February, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge